# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATTI J. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-1345 |
| | ) | |
| v. | ) | Judge Cercone |
| | ) | Magistrate Judge Caiazza |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the District Court grant the Plaintiff's Motion for Summary Judgment (Doc. 8), deny the Defendant's Motion for Summary Judgment (Doc. 10), and remand this case for further administrative proceedings.

### II.  REPORT

**BACKGROUND**

The Plaintiff Patti J. Thompson ("Ms. Thompson" or "the Claimant") has filed this social security appeal, challenging the ALJ's decision dated August 16, 2005. *See generally* Compl. (Doc. 1). The Claimant seeks Disability Insurance Benefits ("DIB") and, to be eligible, she must prove disability on or before December 31, 1998. *See* ALJ's Decision, R. at 15.

The ALJ found Ms. Thompson suffered "severe" impairments of the cervical and lumbar spine, but that said conditions did not

preclude her from performing sedentary work with a sit-stand option. *Id.*, R. at 15, 16-17.[1] The vocational expert ("VE") testified that, if restricted to sedentary work, Ms. Thompson could perform jobs that existed in significant numbers in the national economy, and the ALJ found the Claimant not disabled at step five of the sequential analysis. *See id.*[2]

**<u>ANALYSIS</u>**

The circumstances surrounding Ms. Thompson's disability claim present a difficult case for regulatory and adjudicative review. As noted above, the relevant inquiry is whether the Claimant was disabled on or before December 31, 1998. Although her treatment records (many of which address non-"severe" conditions) are voluminous, there are few physician reports addressing her spine impairments during the period in question. *Cf. generally* ALJ's Decision, R. at 16 ("The record basically deals with events well after the [C]laimant's date last insured.").

---

[1] Unfortunately, this Claimant has suffered a number of serious health problems over the years. Aside from her back, however, there is no evidence that her other conditions placed meaningful restriction(s) on her capacity to work during the relevant time frame. *See, e.g.*, Hearing Tr., R. at 52 (counsel conceded that Ms. Thompson's depression post-dated her coverage period); *id.* at 53 (Claimant testified her Hodgkin's Disease and asthma were successfully treated). Thus, the District Court may restrict its analyses accordingly.

[2] The ALJ did not include a sit-stand option in his hypothetical question to the VE. *See* Hearing Tr., R. at 76-77. Given that the ALJ's Decision assumed a sit-stand option in finding non-disability, this alone would require a remand to correct the hypothetical question. *Cf. generally* discussion *infra*.

What do exist, though, are the voluminous progress notes of chiropractor Kirk W. Weber. *See* R. at 312-447, 606-799 (covering visits from April 1993 through July 2003). Although Ms. Thompson treated with Mr. Weber for over ten years, on a nearly weekly basis, the ALJ gave his reports very short shrift. *See* ALJ's Decision, R. at 16 (limiting discussion of findings to statement: "the [ALJ] gives little weight to these records, because a chiropractor is not recognized as a qualified source of medical evidence by the [A]dministration").

The ALJ's disregard for Mr. Weber's findings was even more pronounced at the hearing:

> [Mr. Weber] doesn't have the qualifications, ma'am. . . . [T]he problem is that I can't give him any weight. I'm bound by the law, . . . and a chiropractor, no, no, I don't give them any weight. I treat them as lay[persons,] . . . this is the bottom line.

Hearing Tr., R. at 47-48.

The ALJ was correct about one thing, namely that "a chiropractor's opinion is not 'an acceptable medical source' entitled to controlling weight." *See* <u>Hartranft v. Apfel</u>, 181 F.3d 358, 361 (3d Cir. 1999) (citing and quoting regulations). This does not mean, however, that a chiropractor's findings and opinions should be completely disregarded in all cases.

"Although DIB eligibility can[]not rest [exclusively] upon the opinion of a chiropractor, a hearing examiner can consider [his] opinion, along with all of the other evidence . . .[,] insofar as it is deemed relevant to assessing . . . disability." *Id.* at 361-62 (citation omitted). Indeed, the ALJ must exercise discretion to determine whether the acceptance or rejection of a chiropractor's findings is necessary to his issuance of a disability determination supported by substantial evidence. *See generally* Mackey v. Barnhart, 306 F. Supp.2d 337, 344 (E.D.N.Y. 2004) (given chiropractors' endorsement in regulations as "an 'other source,'" his "opinions may be given '<u>significant weight</u>' under the <u>appropriate circumstances</u>") (citations omitted, emphasis added); *see also* Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 530 (6th Cir. 1997) ("the ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion <u>based on all evidence in the record</u>") (citations omitted, emphasis added).

In this case, the ALJ failed to offer a satisfactory explanation why he summarily disregarded the notes and findings of the chiropractor. As referenced above, Mr. Weber is the only source whose records track, over an enduring longitudinal period, the Claimant's back impairments, her complaints of pain and other symptomatology, and treatment. To cast these findings aside so lightly is consistent with neither the spirit nor intent of the

regulations, and his decision was to the significant detriment of Ms. Thompson.

Among other things, Mr. Weber's records provide almost week-by-week reports of the Claimant's subjective complaints, clinical observations regarding the physical manifestation(s) of her back pain, as well as her treatment modalities and their degree of effectiveness. As discussed in greater detail below, this evidence may well be essential to conducting a proper "retroactive" diagnostic evaluation to determine whether Ms. Thompson was disabled before the expiration of her DIB coverage. *See* discussions *infra*.

In addition, the ALJ's rejection of Mr. Weber's findings, which reflected persistent and longstanding efforts to seek relief through chiropractic treatment, effectively stripped the Claimant of a potential inference regarding the credibility of her complaints. *See generally* Lawton v. Barnhart, 2005 WL 281378, *11 (10th Cir. Feb. 7, 2005) ("a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to [her] allegations of intense or persistent pain or other symptoms for the purposes of . . . credibility") (citation to quoted source omitted); Wilson v. Astrue, 2007 WL 4225507, *9 (E.D. Pa. Nov. 28, 2007)

(same).³

The ALJ also was unaware of, or insensitive to, this Circuit's law regarding the potential need for "retroactive inferences." In Walton v. Halter, the Third Circuit Court acknowledged the "difficult[y]" that "slowly progressive impairments" may present in "[d]etermining the proper onset date" of disability. *See id.*, 243 F.3d 703, 708 (3d Cir. 2001) (citation and internal quotations omitted). The Walton Court joined numerous others in holding that, "if the medical evidence is ambiguous and a retroactive inference is necessary," the ALJ must "call upon the services of a medical advisor to insure that the [onset] determination" has "a legitimate medical basis." *See id.* at 709-10 (citations, internal quotations and alterations omitted); *see also id.* ("when onset [date] is ambiguous,"

---

³ It also appears fundamentally unfair to punish Ms. Thompson for not knowing, or likely even considering, whether a chiropractor qualified as an "acceptable medical source" for the purposes of disability. Mr. Weber is a "Doctor of Chiropractic," *see* R. at 595, and the medical efficacy of his practice would, at best, appear the subject of public and professional debate. *Cf. generally* AMA's website at http://www.ama-assn.org/apps/pf_new/pf_online?f_n=browse&doc=policyfil es/HnE/E-3.041.HTM ("It is ethical for a physician to associate professionally with chiropractors provided that the physician believes that such association is in the best interests of his or her patient. A physician may refer a patient for diagnostic or therapeutic services to a chiropractor permitted by law to furnish such services whenever the physician believes that this may benefit his or her patient. Physicians may also ethically teach in recognized schools of chiropractic."). While the court is in no position to second-guess the Administration's decisions regarding "acceptable medical source[s]," the ALJ's refusal to give at least some consideration to Mr. Weber's reports appears not only a draconian punishment for the Claimant's treatment selection but a threat to the truth-seeking missions of the court and the Administration.

enlistment of medical expert is "mandat[ed]").

In his hearing and Decision, the ALJ offered little analysis regarding the state of Ms. Thompson's conditions, and resulting RFC, as of December 1998. He seemed disinclined to consider whether more recent records, read in conjunction with contemporaneous evidence of impairment, could support a retroactive inference:

> The problem is we're in the year 2005, okay. . . . [T]he record[s] you have furnished . . . are all after her date last insured . . . . So virtually everything you've submitted in the file is not even relevant to this proceeding. . . .
>
> . . . .
>
> Concocting all this stuff after the date last insured doesn't . . . help the [C]laimant's case at all.

See Hearing Tr., R. at 46-47.[4] Likewise, the Administration's non-examining physician appeared unwilling to commit an opinion regarding retroactiveness. See R. at 454 ("[the Claimant's] current allegations don't necessarily reflect [the] period before . . . 12-31-98") (emphasis added).

---

[4] To be fair, when the ALJ made these statements, Claimant's counsel had yet to furnish all the medical and chiropractic records preceding the expiration of Ms. Thompson's coverage. Nevertheless, his suggestion that more recent records and opinions were irrelevant is inconsistent with Third Circuit law. See Kelley v. Barnhart, 2005 WL 1634304, *3 (3d Cir. Jul. 13, 2005) ("the lack of contemporaneous medical evidence of an objective nature is not necessarily determinative as to the onset date, and to the extent the ALJ's decision [is] based on a legal determination that the onset date of an impairment ha[s] to be proved by such medical evidence, it is erroneous") (citing published authority).

-7-

Although the Claimant seems to have appreciated the need for a retroactive inference, her treating sources' reports were of little utility. *See, e.g.*, Hearing Tr., R. at 44-45 (one treating physician stated he could not offer such opinion because he had not personally treated Claimant before December 1998). And while Mr. Weber did author an RFC evaluation purportedly relating back before the December 1998 cutoff, his findings are not supported by meaningful citation to medical evidence and, even if they were, his opinions cannot be afforded controlling weight. *Compare* Mr. Weber's report, R. at 598 (claiming "orthopedic tests, neurological tests, X-rays [and] surgical reports" issued in 1990s "support[ed his] diagnosis," but failing to identify such records or explain why they supported RFC limitations he endorsed) *with* Holiday v. Barnhart, 2003 WL 22287408, *3 (3d Cir. Oct. 6, 2003) ("opinions from [even] treating physicians on the nature and severity of an impairment will be given [controlling] weight . . . only if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques") (citation to regulations and internal quotations omitted); *see also* discussion *supra* (chiropractor's opinions are not "entitled to controlling weight").

The Claimant also has submitted an RFC report from treating physician Dennis Demby, M.D. Both Dr. Demby's and Mr. Weber's evaluations were presented under suspicious circumstances.

Just days before the hearing commenced on February 15, 2005, *see* R. at 40, these sources authored three RFC reports containing eerily similar findings. Very modest deviations aside, the sources endorsed the same RFC limitations by checking identical boxes on a form provided by Claimant's counsel. Significantly, both providers checked a box indicating Ms. Thompson was required to lie down for three hours during an eight hour work day. *See* R. at 594, 597, 600. The three hour resting requirement was the centerpiece of Claimant counsel's position at the hearing, and it was the only issue addressed on cross-examination of the VE. *See* Hearing Tr., R. at 77.

The problem is, nowhere in the record do Ms. Thompson's treating sources indicate that she needed to, or did, lie down for three hours a day to alleviate her symptoms. Not even the Claimant's "Daily Activities Questionnaire," completed by her in great detail, made any reference to this limitation. *See* R. at 150-59. Rather, the first time the Claimant suggested the need to lie down was at the hearing, when she answered "yes" to a leading question posed by counsel. *See* Hearing Tr., R. at 58.

"In the end, all relevant factors . . . should be considered in weighing each [source's] opinion, including factors that might discount a treating physician's opinion, such as lack of expertise or evidence of undue bias." <u>Cyprus Cumberland Res. v. Director, Office of Workers' Comp. Programs</u>, (3d Cir. Feb. 28,

2006) (citing legal standards materially similar to those applied in Social Security appeals); *see also id.* (citing with approval and quoting decision holding that medical opinion is properly discounted where "[it] seems like a case in which the treating physician wanted to help his patient's family").

Given the suspicious circumstances surrounding these treating sources' opinions, any attempts by them to state favorable retroactive inference opinions, currently or on remand, may be viewed with skepticism.

For all of the reasons stated above, this case should be remanded so the Claimant may submit to consultative and/or other medical examinations to determine her condition, through retroactive inference, on or before December 31, 1998. Given the relative dearth of contemporaneous reports from "acceptable medical sources," chiropractor Weber's progress notes may be reviewed for corroborative evidence. *See* discussions *supra*; *and see* <u>Kelley</u>, 2005 WL 1634304 at *3 ("[r]etrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, <u>but corroborated by lay evidence relating back to the claimed period of disability</u>, can support a finding of past impairment") (citation to quoted source omitted, emphasis

added).[5]

**INSTRUCTIONS ON REMAND**

Aside from the rulings recommended above, the remand should account for the following.

The administrative process should begin at stage three of the sequential analysis, regarding the Listings. The ALJ's Decision merely echoed the requirements of the relevant Listings and said they were not met. No medical source, including the SSA's non-examining physician, addressed the Claimant's conditions as they related to the Listings. Assuming the ALJ had sufficient medical expertise to conduct the listing determination(s) based on the scant, raw data in the record, the undersigned cannot pretend to possess the same. *See generally* Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983) ("an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence") (citations and internal quotations omitted); Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000) (ALJ's summary conclusion that claimant's impairments do not meet or equal

---

[5] These things being said, it remains a distinct possibility that the consultative and/or other physician(s) may be incapable of determining, to a degree of reasonable medical certainty, the status of the Claimant's conditions and resulting RFC in December 1998. Should that prove the case, Ms. Thompson's application will be left wanting. *See generally* Allison v. Apfel, 2000 WL 1276950, *5 (6th Cir. Aug. 30, 2000) ("[a]lthough the ALJ is responsible for ensuring . . . a full and fair hearing," "the claimant [carries] the ultimate burden of [proving] disability") (citations omitted).

-11-

Listing, without "discussing the evidence" "or explaining his reasoning," may leave court with "[s]uch a bare conclusion [it] is beyond meaningful judicial review") (citations and internal quotations omitted).

The current Listings analysis is too thin for the court to review, and it should be fleshed out on remand. This would appear highly relevant to the physicians' retroactive inference evaluation, moreover, as the question is whether Ms. Thompson met or equaled a Listing on or before December 31, 1998.

Otherwise, the ALJ should allow for the collection of further evidence, including consultative examination(s), any clarification(s) regarding medical evidence already in the record, and medical evidence developed by the Claimant. *See* discussions *supra*; Woodrow v. Secretary of Health & Human Servs., 1990 WL 66500, *3 (N.D.N.Y. May 10, 1990) ("if [a] treating source provides an incomplete report," ALJ should request "the necessary additional evidence and interpretation or explanation from the treating source to resolve inconsistenc[ies] . . . in the record"); Gachette v. Weinberger, 551 F.2d 39, 40-41 (3d Cir. 1977) (counsel "should be permitted to make an offer of proof regarding what a more fully developed record might have shown").

After the collection of evidence, and in the event the ALJ decides the case at stage five of the sequential analysis,

the ALJ should take additional sworn statements from a vocational expert.[6] As noted above, the current VE testimony is based on an incomplete hypothetical question. *See* discussion *supra* (noting ALJ found sit-stand option but failed to present it to VE). In any event, the record on remand must be expanded, and the current testimony almost certainly will not account for the further developments.

**CONCLUSION**

For all of the reasons stated above, the Plaintiff's Motion for Summary Judgment should be granted, the Defendant's Motion denied, and this case remanded for further administrative proceedings as described above.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by June 6, 2008. Responses to objections are due by June 16, 2008.

May 21, 2008

Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Christine M. Nebel, Esq.
Jessica Smolar, Esq.

---

[6] There appears no reason to consider further testimony from Ms. Thompson, as any statements potentially relevant to the retroactive inferences analysis have already been made part of the record.

-13-